UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RAMSEY ENGLISH CANTU, § § *Plaintiff*, § § v. § § THE TEXAS DEMOCRATIC PARTY AND § GILBERTO HINOJOSA, in his official capacity § as Chair of the Texas Democratic Party, § § *Defendants*. § § § | CIVIL ACTION NO. 5:19-CV-01444 Complaint for Declaratory Judgment and Injunctive Relief |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTIVE RELIEF AND WRIT OF MANDAMUS**

TO THE HONORABLE COURT:

**I.    Introduction**

1. This action has been brought to correct a tremendous wrong. The rights of Ramsey English Cantu, as a candidate and a voter, have been violated by rote and selective application of the Texas Constitution Article III, Section 19 to remove his name from the ballot for Democratic Party's nomination for State Representative HD 74. Without the filing of a formal complaint, the Texas Democratic Party selectively reviewed "public" documents in order to remove Mr. Cantu's name from the Democratic Primary ballot after making a determination that Mr. Cantu was ineligible pursuant to an anachronistic reading of Art. III, § 19 of the Texas Constitution

2. Article III, Section 19 of the Texas Constitution states, " [n]o judge of any court, Secretary of State, Attorney General, clerk of any court of record, or any person holding a lucrative office under the United States, or this State, or any foreign government shall during the term for which he is elected or appointed, be eligible to the Legislature." Mr. Cantu resigned

1

from his former office as the Mayor of Eagle Pass, Texas. He resigned before he filed to seek the Democratic nomination for State Representative for House District 74 (HD 74). The Texas Constitution requires him to holdover until his replacement is qualified. There will be a special election to fill the remainder of his term on February 1, 2020. At no point will Mr. Cantu's term as Mayor overlap with his term as State Representative for HD 74, should he secure the nomination of his Party and ultimately be successful in the general election. Despite these facts, the Chair of the Texas Democratic Party has made a determination without notice or hearing that Mr. Cantu is ineligible to seek legislative office.

3. The Texas Supreme Court has held and the Attorney Generals have opined that Article III, Section 19 does not disqualify the holder of a "lucrative office" from running for the legislature even though the term of the lucrative office overlaps the legislative term, if the officeholder resigns from the lucrative office before filing for the legislature. *See Wentworth v. Meyer*, 839 S.W.2d 766 (Tex. 1992); Op. Tex. Att'y Gen. No. 97-092 (1997). Mr. Cantu did just that.

4. The failure of the Texas Democratic Party to place Mr. Cantu's name on the ballot also violates the Texas Democratic Party's ministerial duty to place eligible candidates on the ballot. The remedy for this injury is a mandatory injunction or a writ of mandamus placing Mr. Cantu's name on the ballot.

5. There is another danger, as well. Both facially and as applied in this instance, this Texas Constitutional provision violates the equal protection clause of the 14th Amendment, because it treats similarly-situated individuals in vastly unequal ways for no rational purpose. The remedy for this injury is injunction.

## II.     Jurisdiction and Venue

6. This action raises federal questions under the United States Constitution, particularly questions relating to the Fourteenth Amendment. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357 and 1367; and pursuant to 42 U.S.C. § 1983. Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 - 2202, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas.

## III.    Parties

7. Plaintiff, Ramsey English Cantu is a candidate for the Democratic nomination for Texas State Representative for HD 74. He is a resident and registered voter of Eagle Pass, Texas. He has standing to seek these causes of action because his rights as a voter and a candidate have been violated. He has been injured by the omission of his name on the ballot for the 2020 Democratic Primary. He may be served by and through his counsel in this cause of action.

8. Defendant, the Texas Democratic Party (TDP), is a political party representing millions of Texans. They are the election authority that determines the eligibility of the candidacies for Democratic nominations for statewide and multi-county districts candidates. They have injured the plaintiff by omitting his name from the ballot and violating his constitutional rights as a candidate for public office and a voter. The Texas Democratic Party may be served at 1106 Lavaca St #100, Austin, Texas 78701.

9. Defendant, Gilberto Hinojosa, is the Chair of the Texas Democratic Party and is the final authority who makes determinations concerning candidate eligibility for Texas Democratic Party statewide and multi-county district nominees. He is sued in his official capacity. He has injured

Mr. Cantu by omitting Mr. Cantu's name from the 2020 Democratic Primary ballot. Chair Hinojosa may be served at 1106 Lavaca St #100, Austin, Texas 78701.

**IV.    Facts**

### General Facts

10. Ramsey English Cantu is the former Mayor of Eagle Pass, Texas.

11. On November 12, 2019, the Plaintiff announced his resignation as the Mayor of Eagle Pass, Texas. Attachment 1 – Eagle Pass City Council Minutes -11/12/19.

12. On November 15, 2019, the Plaintiff filed for the Democratic nomination for State Representative for House District 74, which is an office filled by voters of more than one county.

13. On November 18, 2019, the City Council of Eagle Pass passed an order calling for an election for the office of Mayor to be held on February 1, 2020. Attachment 2 – Eagle Pass Election Ordinance -2019-57R.

14. The election will be canvassed "not earlier than the 3rd Day or later than the 11th day after [the] election." Attachment 2 – Eagle Pass Election Ordinance -2019-57R at § 19.

15. The Plaintiff will not seek election to be Mayor of Eagle Pass in the February 1, 2020 special election.

16. The Plaintiff filed his application for candidacy with the Texas Democratic Party directed at the Defendant Hinojosa pursuant to Tex. Elec. Code § 172.022 (a) (1).

17. The Texas Democratic Party is the authority, by and through its Chair, which reviews each application for compliance with the requirements of form, content, and procedure to be placed on the ballot. Tex. Elec. Code § 141.032; § 172.0222.

18. This review must be completed by the 5th business day of the receipt of the application by the authority. Tex. Elec. Code § 172.0222 (c). There was no challenged to the form, content, and

procedure. Therefore, Plaintiff's candidate application met the requirements as to form, content and procedure.

19. Despite this, the Texas Democratic Party has the authority to review public documents to determine whether a candidate meets the eligibility requirements for the office sought. "When presented with an application for a place on the ballot or another public record containing information pertinent to a candidate's eligibility, the appropriate authority shall promptly review the record.  If the authority determines that the record establishes ineligibility as provided by Subsection (f), the authority shall declare the candidate ineligible… A candidate may be declared ineligible only if …. (2) facts indicating that the candidate is ineligible are conclusively established by another public record." Tex. Elec. Code § 145.003.

20. After the close of the filing period, on December 10, 2019 at 7:21 PM, Defendant Hinojosa sent a letter notifying the Plaintiff that the Chair had administratively determined that the Plaintiff was ineligible for the office of State Representative because the term of the office of Mayor of Eagle Pass and the term of the office for State Representative overlapped. Attachment 3 – Letter of Ineligibility from Chairman Hinojosa 12/10/2019.

21. In his letter, the chair stated, "Today, I received two public records concerning your candidacy from Eddie Morales, another candidate who filed an application for the same office.  The first public record is a Certificate of Election showing your election on May 6, 2017 to a new four year term.  The second public record is the City of Eagle Pass Charter which demonstrates that your term is four years in length and that you are paid $10.00 per month.  Based on these records, Mr. Morales requests that I declare you ineligible pursuant to TEX. ELEC. CODE § 145.003." Attachment 3 – Letter of Ineligibility from Chairman Hinojosa 12/10/2019.

22. The letter further elaborates the TDP that Mr. Cantu's resignation nor his imminent replacement as Mayor of Eagle Pass did not meet the requirements of eligibility under the Texas Constitution. In the Chair's view, because the Plaintiff was a holdover officer pursuant to the Texas Constitution, then he was ineligible.

23. This is not the law of the State of Texas. The law of Texas clearly allows candidates whose terms overlap with the terms of legislators to resign and seek office. *See Wentworth v. Meyer*, 839 S.W.2d 766 (Tex. 1992); Op. Tex. Att'y Gen. No. 97-092 (1997).

24. The Plaintiff is entitled by law to a place on the ballot for the Democratic nomination for State Representative of House District 74.

## Article III, § 19 Violates the Equal Protection Clause

25. Article III, § 19 has been found constitutional by the United States Supreme Court. *Clements v. Fashing*, 457 U.S. 957 (1982).

26. In a limited holding, the Supreme Court found "Section 19 clearly rests on a rational predicate. That provision furthers Texas' interests in maintaining the integrity of the State's Justices of the Peace. By prohibiting candidacy for the legislature until completion of one's term of office, 19 seeks to ensure that a Justice of the Peace will neither abuse his position nor neglect his duties because of his aspirations for higher office. The demands of a political campaign may tempt a Justice of the Peace to devote less than his full time and energies to the responsibilities of his office. A campaigning Justice of the Peace might be tempted to render decisions and take actions that might serve more to further his political ambitions than the responsibilities of his office. *The State's interests are especially important with regard to judicial officers. It is a serious accusation to charge a judicial officer with making a politically motivated decision.* By

contrast, it is to be expected that a legislator will vote with due regard to the views of his constituents." *Id.* at 968. (emphasis added).

27. Mayor of Eagle Pass is not a judicial office. Moreover, Mr. Cantu has resigned his position.

28. The Supreme Court found that Article III, § 19 even though it only applied to certain offices, Texas was nevertheless allowed to "regulate one step at a time, addressing itself to the phase of the problem which seems most acute.'" *Id.* at 969. (quoting *Williamson v. Lee Optical Co.*, 348 U.S., at 489).

29. In the nearly 40 years since *Clements*, Texas has failed to take further remedial measures that would lessen the Constitutional tension between Article III, § 19 and the 14th Amendment's equal protection clause. No offices have been added or subtracted from the text. No clarity has been added to the text.

30. However, the Texas Supreme Court has created several judicially-created exceptions to Article III, § 19. Before *Wentworth*, resignation and replacement did not prevent ineligibility. In the ensuing decades, various Attorney General Opinions have excluded offices that would have previously created ineligibility. *See e.g.* Op. Tex. Att'y Gen. No. 97-092 (1997); Op. Tex. Att'y Gen. No. 02-0464 2002) (excluding governing members of the economic development board).

31. In fact, the term "lucrative office" has exacerbated equal protection concerns. In the view of Texas Law, expenses or reimbursements for office no matter how dear do not create a "lucrative office". However, the compensation of $10.00 per month does.

32. The exceptions and undulating case law have created the opportunity for irrational, unreasonable, and unequal treatment under the law. A councilmember who is "compensated" is ineligible because he or she has a "lucrative office", but a similarly-situated councilmember who

receives reimbursement but not "compensation" is not ineligible. In this situation, there are two candidates for the Texas legislature, both of whom hold the same public office, and one is eligible and the other is not. That violates the equal protection clause.

33. The dangerously uncertain parameters of Article III, § 19 allow gatekeepers of both parties and election officials at the state and local level to engage in invidious candidate selection and to practice racial or other impermissible policy goals.

34. Latino and other minority candidates are more likely to seek public offices that offer compensation than Anglo counterparts.

35. Little notice or hearing was allowed before this decision was made by the Defendant.

36. Article III, § 19 is no longer reasonable, rational, or free from invidious discrimination.

37. Article III, § 19 now facially and, as applied in this instance, violates the 14th Amendment.

## The Urgent Need to Act Now

38. Ballot order will be determined very soon.

39. Ballots will be printed in the very near term.

40. Early vote begins in nearly 60 days.

41. If this Court does not mandate that the Defendant's place Ramsey English Cantu's name on the 2020 Democratic Primary ballot very quickly, then his rights will have expired without notice, hearing and against Texas and Federal law.

**V.      Violations of Law**

### Count #1- Article III, § 19 Violates the 14th Amendment – Equal Protection Clause

42. Plaintiff incorporates by reference all factual allegations above as if set forth herein.

43. The Fourteenth Amendment to the United States Constitution guarantees persons the equal protection of the laws, and prohibits the government from treating persons differently than a similarly situated individual.

44. Article III, § 19 bears more heavily on persons from one race to another.

45. Article III, § 19 violates the Fourteenth Amendment of the United States Constitution.

### Count #2 – Article III, § 19 and the Texas Election Law violates 14th Amendment's – Due Process Clause

46. Plaintiff incorporates by reference all factual allegations above as if set forth herein.

47. Article III, § 19 and Tex. Elec. Code § 145.003 fails to define key terms and gives no notice to the average candidate about what behaviors give rise to ineligibility under the law.

48. Laws must state explicitly what the law mandates and what is enforceable. The phrase "Lucrative office" and other key phrases in the constitution have been misinterpreted and are ambiguous.

49. A statute or Constitutional provision is void for vagueness the delegation of authority to judges and/or administrators is so extensive that it would lead to arbitrary determinations of ineligibility.

50. The due process clause of the Fourteenth Amendment requires notice of the behavior or criteria that would render a candidate ineligible for legislative office.

51. Article III, § 19 and Tex. Elec. Code § 145.003 violates the due process clause of the Fourteenth Amendment.

### Count #3 – The TDP violated Texas Election Law by omitting Plaintiff's name from the 2020 Democratic Ballot

52. Plaintiff incorporates by reference all factual allegations above as if set forth herein.

53. Chairman Hinojosa and the Texas Democratic Party have a ministerial duty to place all eligible candidates on the primary ballot for which TDP is the filing authority.

54. Defendants also have a duty to notify the Secretary of State concerning the names of all eligible candidates for the Democratic nomination for which TDP is the filing authority.

55. Ramsey English Cantu is eligible for the office of State Representative.

56. In denying him access to the ballot, the Defendants cherry-picked public documents provided by one of his opponents and turned a blind eye to Mr. Cantu's resignation and the special election that will replace him.

57. The Party adopted a pre-*Wentworth* view of Article III, § 19, while allowing other candidates historically who would have fallen prey to this new found enthusiasm for textual absolutism. Wendy Davis, Diego Bernal, Roland Gutierrez, and dozens of other candidates were city council members with overlapping terms with the legislature. None of those candidates were excluded from the ballot of the Party.

58. Mr. Cantu is eligible for the ballot. His denial of the ballot violates the Texas Election Code, including Tex. Elec. Code §§ 172.022, 172.028, and 172.029. The remedy for which is injunction. *See* Tex. Elec. Code § 273.081.

## VI.   DECLARATORY JUDGMENT

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

61. Plaintiff has no adequate remedy at law.

62. Absent declaratory relief, Plaintiff will continue to be harmed.

## VII.   Request for Injunctive Relief

63. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

64. Pursuant to Tex. Elec. Code § 273.081 and Rule 65 of the Federal Rules of Civil Procedure, the Plaintiff seeks a mandatory injunction forcing the Defendant's to place his name on the ballot for the 2020 Democratic Primary.

65. Plaintiffs will likely succeed on the merits, because the Mr. Ramsey English Cantu is entitled to have his name placed on the ballot, because he meets all requirements for eligibility. In addition, Article III, Section 19 and parts of Texas Election Code also violate the U.S. Constitution.

66. Plaintiff will suffer immediate and irreparable injury if he is not allowed to be placed on the ballot in the very term as his rights will expire and he will not be a candidate for HD 74 though he meets all eligibility criteria.

67. There is no harm to the Defendants because Mr. Cantu is eligible for the office that he seeks. Assuming *arguendo* that Mr. Cantu was ineligible, there is ample time before the 74th day before the general election for the Party and its officials to replace him.

68. The injunction is in the public interest, because the right to seek public office is protected by federal and state law, and guaranteed by the U.S. and Texas Constitutions. It is the public interest of this State to protect the right of every person to seek public office and to ensure the equal protection and due process of laws.

69. Plaintiffs have no other adequate, plain, or complete remedy at all other than enjoining the Defendants.

70. Plaintiff requests that the Court enter a permanent injunction mandating that the Defendants place the plaintiff's name on the ballot for nomination for State Representative of House District 74 for the 2020 Democratic Primary.

### VIII.   Request for a Writ of Mandamus

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. A requestor may seek a writ of mandamus compelling a governmental official to take a ministerial action required by law. A requestor may also seek mandamus to force a political party official to execute a non-discretionary duty that is outlined in the Texas Election Code. Tex. Elec. Code § 161.009. The Chair and the TDP have a non-discretionary duty to place eligible candidates on the ballot for Democratic Party Elections.

73. Defendants have breached their duty to Plaintiff under the Texas Election Code by failing to place his name on the 2020 Texas Democratic Ballot and declaring him ineligible.

74. When government officials or party officials fail to complete a mandatory duty under the election code, that inaction is subject to a writ of mandamus to force the government officials into conformance with the law. *See Hamilton v. Washington*, No. 03-11-00594 CV, 2014 WL 7458988 at *9 (Tex. App.—Austin Dec. 23, 2014, no pet.) (not designated for publication).

75. Defendants have breached a non-discretionary, ministerial duty. Therefore, plaintiff is entitled to a writ of mandamus compelling that his name be placed on the ballot for the 2020 Democratic Primary.

### IX.   Prayer for Relief

76. For the foregoing reasons, Plaintiff respectfully requests that Defendants be cited to appear and answer and that the Court take the following actions and grant the following relief:

A. Appropriate preliminary and permanent injunctive relief to which Plaintiff shows itself entitled;

B. Issue a writ of mandamus mandating the Defendant's actions;

B. Entry of a declaratory judgment as described above;

C. Attorneys' fees and court costs; and,

D. Any other or further relief, in law or equity, that the Court determines that plaintiff is entitled to receive.

**DATED**: December 12, 2019                           Respectfully,

By: /s/ *Martin Golando*

Martin Golando, lead counsel
Texas Bar No.  24059153

Jose Garza, co-counsel
Texas Bar No. 07731950

Garza Golando Moran, PLLC
405 N. St. Mary's, Suite 700
San Antonio, Texas 78205
(210) 892-8543
(210) 471-1185
Martin.Golando@gmail.com

Attorney for Mr. English Cantu

# AFFIDAVIT IN SUPPORT OF PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORYJUDGMENT AND EMERGENCY INJUNCTIVE RELIEF AND WRIT OF MANDAMUS

THE STATE OF TEXAS

COUNTY OF MAVERICK

BEFORE ME, the undersigned authority, personally appeared Ramsey English Cantu who being duly sworn, deposed as follows:

"My name is Ramsey English Cantu I am at least 18 years of age and of sound mind. I have personal knowledge of the facts as alleged in Plaintiff's ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTIVE RELIEF AND WRIT OF MANDAMUS and each and every fact stated therein are true and correct."

_____
Ramsey English Cantu, Affiant and Plaintiff

---

THE STATE OF TEXAS

COUNTY OF MAVERICK

SUBSCRIBED AND SWORN TO BEFORE ME on December 12, 2019, by Ramsey English Cantu.

_____
Notary Public, State of Texas

CHIRIZ ARISTA
Notary Public, State of Texas
Comm. Expires 01-31-2022
Notary ID 131430780